FILED

APR 19 2012

AZB

FORM 104 (10/06)

# ADVERSARY PROCEEDING COVER SHEET
## (Instructions on Reverse)

TAWANA C. MARSHALL, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ADVERSARY PROCEEDING NUMBER**
(Court Use Only)

| | |
|---|---|
| **PLAINTIFF(S)**<br><br>Rufus Shannon | **DEFENDANT(S)**<br><br>DUETSCH BANK NATIONAL TRUST, Michelle Trotter, M. Zenarosa, Chicago Title Company, C&C Residential Properties, Inc., Terry D Russell, Tim Ral |
| **ATTORNEY(S)** (Firm Name, Address, and Telephone No.)<br><br>N/A | **ATTORNEY(S)** (If Known)<br><br>HARRIET LANGSTON, P.C. Harriet Langston, Terry D. Russell, and Tim Walker Hill. |
| **PARTY** (Check One Box Only)<br><br>[✓] Debtor   [ ] U.S. Trustee/Bankruptcy Admin<br>[ ] Creditor  [ ] Trustee  [ ] Other | **PARTY** (Check One Box Only)<br><br>[ ] Debtor   [ ] U.S. Trustee/Bankruptcy Admin<br>[✓] Creditor  [✗] Trustee  [✓] Other |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

No proof of Claim, no proof of Jurisdiction, no proof of agency by the Attorneys

## NATURE OF SUIT

(Number up to five (5) boxes starting with the lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

*Note: Only a complaint including an objection to discharge under 11 U.S.C. § 727 will defer the clerk's entry of the debtor's discharge in bankruptcy. A complaint to determine the dischargeability of a debt under 11 U.S.C. § 523 does not affect the entry of a discharge with respect to other debts.*

**FRBP 7001(1) – Recovery of Money/Property**
[ ] 11 - Recovery of money/property - § 542 turnover of property
[ ] 12 - Recovery of money/property - § 547 preference
[✗] 13 - Recovery of money/property - § 548 fraudulent transfer
[ ] 14 - Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
[ ] 21 - Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
[ ] 31 - Approval of sale of property of estate and of a co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
[ ] 41 - Objection/revocation of discharge - § 727(c), (d), (e)

**FRBP 7001(5) – Revocation of Confirmation**
[ ] 51 - Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
[ ] 66 - Dischargeability - § 523(a)(1), (14), (14A) priority tax claims
[✗] 62 - Dischargeability - § 523(a)(2), flase pretenses, false representation, actual fraud
[✗] 67 - Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny
**continued next column**

**FRBP 7001(6) – Dischargeability (continued)**
[ ] 61 - Dischargeability - § 523(a)(5), domestic support
[✗] 68 - Dischargeability - § 523(a)(6), willful and malicious injury
[ ] 63 - Dischargeability - § 523(a)(8), student loan
[ ] 64 - Dischargeability - § 523(a)(15), divorce/sep property settlement/decree
[ ] 65 - Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
[ ] 71 - Injunctive relief - reinstatement of stay
[✗] 72 - Injunctive relief - other

**FRBP 7001(8) – Subordination of Claim or Interest**
[ ] 81 - Subordination of claim or interest

**FRBP 7001(9) – Declaratory Judgment**
[ ] 91 - Declaratory judgment

**FRBP 7001(10) – Determination of Removed Action**
[ ] 01 - Determination of removed claim or cause

**Other**
[ ] SS-SIPA Case - 15 U.S.C. §§ 78aaa et seq.
[ ] 02 - Other (e.g., other actions that would have been brought in state court if unrelated to bankruptcy case)

[✓] Check if this case involves a substantive issue of state law

[ ] Check if this is asserted to be a class action under FRCP 23

[ ] Check if a jury trial is demanded in complaint

Demand $ 120,000.00

**Other Relief Sought**

Reconveyance of Deed back to owner Rufus Shannon free of any liens, Bk. removed from my record forced by fraud and conspiracy by any or all of the Defendants and any other relief justified through this Court or any of the

AZB

Form 104 (10/06), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Rufus Shannon | | BANKRUPTCY CASE NO.<br>**12-31175HDH13** |
| DISTRICT IN WHICH CASE IS PENDING<br>NORTHERN DISTRICT OF TEXAS | DIVISIONAL OFFICE<br>DALLAS | NAME OF JUDGE |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF<br>Rufus Shannon | DEFENDANT<br>DUETSCH BANK NATIONAL<br>TRUST  Michelle Trotter M ⊞ | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING<br>NORTHERN DISTRICT | DIVISIONAL OFFICE<br>DALLAS | NAME OF JUDGE |

SIGNATURE OF ATTORNEY (OR PLAINTIFF)

*Rufus Shannon*  PRO·SE

| DATE<br>04-19-2012 | PRINT NAME OF ATTORNEY (OR PLAINTIFF) |
|---|---|

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Parties.** Give the names of the parties to the adversary proceeding exactly as they appear on the complaint. Give the names and addresses of the attorneys if known.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF TEXAS

|  |  |
|---|---|
| ) | |
| DEUTSCH BANK NATIONAL TRUST<br>MICHAEL W. ZIENTZ & MANN PC.<br>DALLAS COUNTY CONSTABLE # 4<br>R. H. WILLIAMS (JUSTICE OF THE<br>PEACE) PRECINCT 4 PLACE 2 DALLAS<br>COUNTY, KATY HUBNER, C&C<br>RESIDENTIAL PROPERTIES INC.et al.,<br>HARRIET L. LANGSTON, Harriet L.<br>Langston | Chapter  [13]<br><br>Case No. 12-31175HDH13 |

Adversary Proceeding No. _____

1

COMPLAINT

Rufus Shannon, , brings the instant Complaint for Injunction against C&C RESIDENTIAL PROPERTIES, INC.American Home Mortgage, DEUTSCHE BANK NATIONAL TRUST et al. (the "Creditors") from County Court Stay from trustee sale  proceedings   the filing of the Debtors' respective petitions for relief under Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq (the "Bankruptcy Code").

NOW COMES the Affiant, Rufus Shannon and moves this honorable Court to vacate the void judgment and writ for the following reasons:

1. Relief requested. The defendant moves the court for an order to vacate the void judgment entered in this action and reversing the writ of possession.

Statement of facts and issues.

2. This Claim is based on the following grounds:

    a.   Lack of Subject Matter Jurisdiction,

        The Court did not define the jurisdiction that the court was going to operate in. The Justice Court have jurisdiction over forcible entry and detainer cases, but not actions in which the issue involving title to the premises. Gov. C.  §  27.031  (a) (2), (b) (4).

        The justice courts share concurrent original jurisdiction with the district and county Courts in civil cases in which the amount in controversy exceeds $200.00 but does not exceed $5,000.00, exclusive of interest for unpaid rent or other damages is not part of the claim for possession, therefore the rent or damages sought must be within the jurisdiction of the court. Tex. Const. Art. 5, §§ 8, 16, and 19; Gov. C §§ 26.042(a),  27.031(a) (1). This claim for jurisdiction in the justice court exceeds $5,000.00 (dollars) (value of property) is over $100,000.00

    b.   Because of the foreclosure documents in writing states that the defendant is a tenant, that then makes him be subject to the term tenant, and therefore responsible to pay rent. The Deed of Trust states that he/she is the property owner.

        A judgment rendered by a court without personal jurisdiction renders the judgment void, it is a nullity. [ A judgment shown to be **void** for lack of personal service on the defendant is a nullity.]- **Sramek v. sramek, 17 kan. App. 2d 573, 576-77,840 P.2d 553 (1992) REV. DENIED 252 Kan. 1093 (1993).** "Where there are no depositions , admissions, or affidavits the court has no facts to rely on for summary determination,"- **Trinsey v. Pagliaro, D.C. Pa. 1964, 229 F. Supp. 647.**

2

3." A court cannot confer jurisdiction where none existed and cannot make a void proceeding valid. It is clear and well established law a void order can be challenged in any court", - **OLD WAYNE MUT. L. ASSOC. V. Mc DONOUGH, 204 U.S.  8 27 S. Ct. 236 (1907).**

    a.  Fraud committed in the procurement of jurisdiction, **Fredman Brother Furniture v. Dept. of Revenue, 109 III. 2d 202, 486 N.E 2d 893(1985)**

        Before a court (Judge) can proceed judicially , jurisdiction must be complete consisting of two opposing parties (not their attorneys. The sufficiency of a pleading is that there be two (2) people opposing. Not the lawyer, but a lawyer and 2 witnesses from the mortgage company. Jurisdiction must be proven and on the record.

    b.  Attorneys can enter an appearance on behalf of a party, but the only parties that can testify are the plaintiff(s). Until the Plaintiff(s) testifies the court has no basis upon which to rule judicially. Attorneys are (third party debt collectors).

    c.  The Attorney must prove with affidavits that they can represent the opposing party. The attorney cannot act as a witness on behalf of a party.

    d.  All affidavits including a QWR on file has not been refuted with an affidavit from the opposing party.

    e.  C&C Purchased said property on a fraudulent Trust Deed without verification of ownership which involves him in the ongoing conspiracy with the seller of the property, Trustees, and Notaries et al.

    f.  Subject Matter Jurisdiction has been challenged and has not been proven in the court.

    g.  Missing assignments in the Dallas County Records

    h.  The Securitization Audit attached with this complaint is evidence of fraud and assignment fraud by the Security agencies and the trustees on the security and purported note.

4."Once jurisdiction has been challenged, the court cannot proceed when it clearly appears that the court lacks jurisdiction, the court has no authority to reach merits, but rather should dismiss

the action". – **Melo v. U.S., 505 F2d 1026. "There is no discretion to ignore lack of jurisdiction." – joyce v. U.S. 474 2D 215.** The Burden shifts to the court to prove jurisdiction". – Rosemond v. Lambert, 469F 2d 416 "Court must prove on the record , all jurisdiction facts related to the jurisdiction asserted". – **Latana v. Hopper, 102 F. 2d 188; Chicago v. New York 37 F Supp. 150.**

"The law provides that once State and Federal jurisdiction has been challenged, it must be Proven." 100 S. Ct. 2502 (1980)

"Jurisdiction can be challenged at anytime." **Basso v. Utah Power & Light Co. 495 F 2d 906, 910.**

"Defense of lack of jurisdiction over the subject matter may be raised at any time, even on appeal." **Hilltop Developers v. Holiday Pines service Corp. 478 So. 2d 368 (Fla. 2nd DCA 1985.**

"Court must prove on the record, all jurisdiction facts related to the jurisdiction asserted." **Lantana v. Hopper, 102 F. 2d 188; Chicago v. New York, 37 F Supp. 150**.

"once challenged, jurisdiction cannot be assumed it must proved to exist. **Stuck v. Medical Examiners 94 Ca. 2d 751, 211nP2d 389**..

"jurisdiction once challenged  cannot be assumed and must be decided. **Maine v. Thibotout 100 S Ct. 250.**

"The Law requires proof of jurisdictionto appear on the record of the administrative agency and all administrative proceedings. " **Hagans v. Lavine 415 U.S. 533**

A Claim to set aside a judgment as void for lack of jurisdiction is not subject to the time

## RULE 60. RELIEF FROM JUDGMENT OR ORDER

1. The judgment was entered although I filed the correct documents.
2. Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud etc....
3. Fraud (whether heretofore denominated intrinsic or extrinsic) misrepresentation or other misconduct of an adverse party.
4. The judgment is void.
5. Judgment shall be by Claim as prescribed in these rules or by an independent action.

**DECLARATION**

1.  I Rufus Shannon declare as follows:
1.  I am the Affiant and owner of said property in this unlawful detainer action.
2.  I request that the judgment entered in this action be vacated for the following reason:

A.) An attorney for the plaintiff cannot admit evidence into the court. He is either an attorney or a witness." (Trinsey v. Pagliaro D.C. Pa. 1964, 229 F F

B.) No. Affidavit, has been refuted.

C.) Violation of Due Process.

D.) No Proof of Agency by Attorneys.

E.) No Provided Bank Charter.

## Verification 28 usc 1746 (1)

I Rufus Shannon, Declare under the laws of the United States and this great state of Texas that the foregoing is true correct complete and not to be misleading. Signed on the _____ day of April , 2012 A.D. in the year of our lord Jesus Christ.

**All Rights Reserved.**

By: _____

Rufus Shannon
3749 Magnolia
Grand Prairie, Texas
972-639-4115

Jurisdiction and Venue

1. This is an adversary proceeding pursuant to Rule 7001 of the Federal Rules of

5

Bankruptcy Procedure and Section 547(b) of the Bankruptcy Code, Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334.

3. This adversary proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

4. This District is the proper venue for this proceeding pursuant to 28 U.S.C. § 1409.

Parties

Rufus Shannon, Affiant 3749 Magnolia Dr., Grand Prairie, Texas 75052

DEUTSCH BANK NATIONAL TRUST
MICHAEL W. ZIENTZ & MANN PC.
DALLAS COUNTY CONSTABLE # 4
R. H. WILLIAMS (JUSTICE OF THE PEACE) PRECINCT 4 PLACE 2 DALLAS
COUNTY, KATY HUBNER, C&C RESIDENTIAL PROPERTIES INC.et al.,
HARRIET L. LANGSTON, Harriet L. Langston
Brice, Vander Linden & Wernick, P.C.
Salim Taberzadeh
Default Resolution Trust

Defendants

5. Upon information and belief, Defendants have their principal place of business in: See Defendants above.

Background

7. The Debtors administered case was commenced by the filing of the Debtors' respective voluntary Chapter 13 Petitions on 3/12/2012

8. The Defendants has acquired a relief from stay on my property with fraudulant documens presented to the court and has caused Affiant to suffer lack of due process in order to steal property that Defendant doesn't lawfully own.

9. Affiant filed a Challenge To The Authority of the Attorneys in County at Law No. 3, which was ignored by the presiding Judge (Sally Montgomery).

10. Affiant filed a Claim and Declaration to vacate void judgment for lack of subject matter jurisdiction in County Court at Law No. 3., Claim was ignored by Presiding Judge (Sally Montgomery).

6

11. Defendant Never showed proof of claim in the chapter 13 Bk., nor any of the other courts other than a fraudulant substitue trustees deed which is null because the seller of the property or note was not the owner of the note or property property.

12 Defendant and Defendant's Attorney has labled Rufus Shannon as a Tennant when his deed states he is the owner.

## CLAIMS FOR RELIEF

13. The following causes of action are asserted against the Defendant herein without prejudice to any rights the

Defendants or Debtors may have, or which this Court may grant to the Defendants or Debtors, to assert additional causes of action or allegations based on facts disclosed in documents or other information made available to the Defendants or Debtors in the future or developed as a result of discovery or otherwise.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court grant Injunction as follows:

(a) grant vacate of writ and all other judgments until this case is heard.

(b) Pursuant to 11 U.S.C. § 502(d), disallow, any claim of Defendant against Debtors; and.

(c) Grant such other and further relief to the Plaintiff as may be just and proper.

By: _____
Rufus Shannon
3749 Magnolia
Grand Prairie, Texas
972-639-4115

SEE: Securityzation Audit by Licensed Auditors.



# PROPERTY SECURITIZATION ANALYSIS REPORT

*"This is a Securitization Analysis Report and not a Forensic Audit Report"*

*Borrowers:*

## DIANNE M. SHANNON &
## RUFUS A. SHANNON

*Property:*
**3749 MAGNOLIA DR,
GRAND PRAIRIE, TX 75052**



# SECTION 1: TRANSACTION DETAILS

**BORROWER:**
**DIANNE M. SHANNON**

**CO-BORROWER:**
**RUFUS A. SHANNON**

**SUBJECT ADDRESS:**
**3749 MAGNOLIA DR,**
**GRAND PRAIRIE, TX 75052**

**MORTGAGE SERVICER:**

**AMERICAN HOME MORTGAGE SERVICING**

**ORIGINAL MORTGAGE LENDER:**

**OPTION ONE MORTGAGE CORPORATION**
**LOAN NUMBER 101049952**

**MORTGAGE NOMINEE / BENEFICIARY:**

**OPTION ONE MORTGAGE CORPORATION**

**MORTGAGE TRUSTEE:**

**JAMES L. ROBERTSON**

**TITLE COMPANY:**

**N/A**



# SECTION 2: SECURITIZATION
## SECURITIZATION PARTICIPANTS:

**ORIGINATOR / LENDER:**

**OPTION ONE MORTGAGE CORPORATION**



**SPONSOR / SELLER:**

**OPTION ONE MORTGAGE CORPORATION**



**ISSUING ENTITY:**

**SOUNDVIEW HOME LOAN TRUST 2005-OPT3**

**CUT-OFF DATE:
SEPTEMBER 1, 2005**

**CLOSING DATE:
ON OR ABOUT SEPTEMBER 30, 2005**



**DEPOSITOR:**

**FINANCIAL ASSET SECURITIES CORP**

**TRUSTEE:**

**DEUTSCHE BANK NATIONAL TRUST COMPANY**

**MASTER SERVICER / SERVICER:**

**DEUTSCHE BANK NATIONAL TRUST COMPANY**



$1,510,104,000 (APPROXIMATE)

## SOUNDVIEW HOME LOAN TRUST 2005-OPT3
## ASSET-BACKED CERTIFICATES, SERIES 2005-OPT3

**FINANCIAL ASSET SECURITIES CORP**
Depositor

**OPTION ONE MORTGAGE CORPORATION**
Originator and Servicer

## CUT-OFF DATE

September 1, 2005.

## CLOSING DATE

On or about September 30, 2005.

## THE DEPOSITOR

Financial Asset Securities Corp., a Delaware corporation and an affiliate of Greenwich Capital Markets, Inc. We refer you to "The Depositor" in the prospectus for additional information.

## ORIGINATOR AND SERVICER

Option One Mortgage Corporation, a California corporation. Any obligation specified to be performed by the servicer in the prospectus is an obligation to be performed by the Servicer with respect to the Mortgage Loans. We refer you to "The Originator and the Servicer" in this prospectus supplement for additional information.

## SELLER

Any or all of: (i) Option One Mortgage Corporation, a California corporation or (ii) Option One Owner Trust 2001-1A, Option One Owner Trust 2001-1B, Option One Owner Trust 2001-2, Option One Owner Trust 2002-3, Option One Owner Trust 2003-4, Option One Owner Trust 2003-5 and/or Option One Owner Trust 2005-6, each a Delaware statutory trust that previously acquired mortgage loans from the Originator. We refer you to "The Seller" in this prospectus supplement for additional information.



TRUSTEE

Deutsche Bank National Trust Company, a national banking association. We refer you to "The Pooling Agreement--The Trustee and the Custodian" in this prospectus supplement for additional information.


CUSTODIAN

Wells Fargo Bank, N.A., a national banking association. We refer you to "The Pooling Agreement--The Trustee and the Custodian" in this prospectus supplement for additional information.


ASSIGNMENT OF THE MORTGAGE LOANS

On the Closing Date, the Depositor will transfer to the Trust all of its right, title and interest in and to each Mortgage Loan, the related mortgage note, Mortgage, assignment of mortgage in recordable form in blank or to the Trustee and other related documents received from the Originator pursuant to the Master Agreement (collectively, the "Related Documents"), including all scheduled payments with respect to each such Mortgage Loan due after the Cut-off Date. The Trustee, concurrently with such transfer, will deliver the Certificates to the Depositor. Each Mortgage Loan transferred to the Trust will be identified on a schedule (the "Mortgage Loan Schedule") delivered to the Trustee pursuant to the Pooling Agreement. The Mortgage Loan Schedule will include information such as the Principal Balance of each Mortgage Loan as of the Cut-off Date, its Mortgage Rate as well as other information with respect to each Mortgage Loan.

The Pooling Agreement will require that, within the time period specified therein, the Depositor will deliver or cause to be delivered to the Trustee (or a custodian on behalf of the Trustee) the mortgage notes endorsed to the Trustee on behalf of the Certificate holders and the Related Documents. In lieu of delivery of original Mortgages or mortgage notes, if such original is not available or lost, the Depositor may deliver or cause to be delivered true and correct copies thereof, or, with respect to a lost mortgage note, a lost note affidavit executed by the Originator. The assignments of Mortgage will not be recorded by or on behalf of the Depositor in the appropriate offices for real property records unless required by the Rating Agencies as provided in the Pooling Agreement; provided, however, upon the occurrence of certain events set forth in the Pooling Agreement, each such assignment of Mortgage shall be recorded as set forth in the Pooling Agreement.

On or prior to the Closing Date, the Trustee (or the Custodian on behalf of the Trustee) will review the Mortgage Loans and the Related Documents pursuant to the Pooling Agreement and if any Mortgage Loan or Related Document is found not to conform to the Custodian's review criteria set forth in the Pooling Agreement and if any material defect is not cured within 90 days following notification thereof to the Originator by the Trustee, the Trustee will enforce the Originator's obligations under the Mortgage Loan Purchase Agreement to either (i) substitute for such Mortgage



Loan a qualified substitute mortgage loan; however, such substitution is permitted only within two years of the Closing Date and may not be made unless an opinion of counsel is provided to the effect that such substitution will not disqualify any of the REMICs (as defined in the Pooling Agreement) as a REMIC or result in a prohibited transaction tax under the Code or (ii) purchase such Mortgage Loan at a price (the "Purchase Price") equal to the outstanding Principal Balance of such Mortgage Loan as of the date of purchase, plus all accrued and unpaid interest thereon, computed at the Mortgage Rate through the end of the calendar month in which the purchase is effected, plus the amount of any unreimbursed Advances and Servicing Advances (each as defined herein) made by the Servicer and any unpaid servicing fees, plus any costs and damages incurred by the Trust in connection with any violation by such loan of any predatory- or abusive-lending law. The Purchase Price will be required to be remitted to the Servicer for deposit in the Collection Account (as defined herein) on or prior to the next succeeding Determination Date (as defined herein) after such obligation arises. The obligation of the Originator to repurchase or substitute for a Deleted Mortgage Loan (as defined herein) is the sole remedy regarding any defects in the Mortgage Loans and Related Documents available to the Trustee or the Certificate holders.

In connection with the substitution of a qualified substitute mortgage loan, the Seller will be required to remit to the Servicer for deposit in the Collection Account on or prior to the next succeeding Determination Date after such obligation arises an amount (the "Substitution Adjustment") equal to the excess of the Principal Balance of the related Deleted Mortgage Loan over the Principal Balance of such qualified substitute mortgage loan.

424B5:
http://www.sec.gov/Archives/edgar/data/1003197/000112528205005036/b409046_424b5.txt



FINANCIAL ASSET SECURITIES CORP.,
Depositor
OPTION ONE MORTGAGE CORPORATION
Servicer
AND
DEUTSCHE BANK NATIONAL TRUST COMPANY,
Trustee
POOLING AND SERVICING AGREEMENT
Dated as of September 1, 2005
Soundview Home Loan Trust 2005-OPT3
Asset-Backed Certificates, Series 2005-OPT3

ARTICLE II
CONVEYANCE OF MORTGAGE LOANS;
ORIGINAL ISSUANCE OF CERTIFICATES

SECTION 2.01
Conveyance of Mortgage Loans.

The Depositor, concurrently with the execution and delivery hereof, does hereby transfer, assign, set over and otherwise convey in trust to the Trustee without recourse for the benefit of the Certificate holders all the right, title and interest of the Depositor, including any security interest therein for the benefit of the Depositor, in and to (i) each Mortgage Loan identified on the Mortgage Loan Schedule, including the related Cut-off Date Principal Balance, all interest accruing thereon on and after the Cut-off Date and all collections in respect of interest and principal due after the Cut-off Date; (ii) property which secured each such Mortgage Loan and which has been acquired by foreclosure or deed in lieu of foreclosure; (iii) its interest in any insurance policies in respect of the Mortgage Loans; (iv) the rights of the Depositor under the Mortgage Loan Purchase Agreement, (v) payments made to the Trustee by the Swap Administrator under the Swap Administration Agreement and the Swap Account, (vi) all other assets included or to be included in the Trust Fund and (vii) all proceeds of any of the foregoing. Such assignment includes all interest and principal due and collected by the Depositor or the Servicer after the Cut-off Date with respect to the Mortgage Loans.

In connection with such transfer and assignment, the Depositor, does hereby deliver to, and deposit with the Custodian on behalf of the Trustee, the following documents or instruments with respect to each Mortgage Loan so transferred and assigned (with respect to each Mortgage Loan, a "Mortgage File"):

(i)        the original Mortgage Note, endorsed either (A) in blank or (B) in the following form: "Pay to the order of Deutsche Bank National Trust Company, as Trustee, without recourse" or with respect to any lost Mortgage Note, an original Lost Note Affidavit stating that the original mortgage note was lost, misplaced or destroyed, together with a copy of the related mortgage note; provided,



however, that such substitutions of Lost Note Affidavits for original Mortgage Notes may occur only with respect to Mortgage Loans, the aggregate Cut-off Date Principal Balance of which is less than or equal to 1.00% of the Pool Balance as of the Cut-off Date;

(ii)      the original Mortgage (noting the presence of the MIN of the Mortgage Loan and language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan), with evidence of recording thereon, and the original recorded power of attorney, if the Mortgage was executed pursuant to a power of attorney, with evidence of recording thereon or, if such Mortgage or power of attorney has been submitted for recording but has not been returned from the applicable public recording office, has been lost or is not otherwise available, a copy of such Mortgage or power of attorney, as the case may be, certified to be a true and complete copy of the original submitted for recording;

(iii)     unless the Mortgage Loan is registered on the MERS® System, an original Assignment, in form and substance acceptable for recording. The Mortgage shall be assigned either (A) in blank or (B) to "Deutsche Bank National Trust Company, as Trustee, without recourse"

(iv)      an original of any intervening assignment of Mortgage showing a complete chain of assignments (or to MERS if the Mortgage Loan is registered on the MERS® System and noting the presence of MIN);

 (v)      the original or a certified copy of lender's title insurance policy; and

(vi)      the original or copies of each assumption, modification, written assurance or substitution agreement, if any.

The Depositor herewith also delivers to the Trustee an executed copy of the Mortgage Loan Purchase Agreement.

If any of the documents referred to in Section 2.01(ii), (iii) or (iv) above has as of the Closing Date been submitted for recording but either (x) has not been returned from the applicable public recording office or (y) has been lost or such public recording office has retained the original of such document, the obligations of the Depositor to deliver such documents shall be deemed to be satisfied upon (1) delivery to the Custodian on behalf of the Trustee no later than the Closing Date, of a copy of each such document certified by the Originator in the case of (x) above or the applicable public recording office in the case of (y) above to be a true and complete copy of the original that was submitted for recording and (2) if such copy is certified by the Originator, delivery to the Custodian on behalf of the Trustee, promptly upon receipt thereof of either the original or a copy of such document certified by the applicable public recording office to be a true and complete copy of the original. If the original lender's title insurance policy, or a certified copy thereof, was not delivered pursuant to Section 2.01(v) above, the Depositor shall deliver or cause to be delivered to the Custodian on behalf of the Trustee, the original or a copy of a written commitment or interim binder or preliminary report of title issued by the title insurance or escrow company, with the



original or a certified copy thereof to be delivered to the Custodian on behalf of the Trustee, promptly upon receipt thereof. The Servicer or the Depositor shall deliver or cause to be delivered to the Custodian on behalf of the Trustee promptly upon receipt thereof any other documents constituting a part of a Mortgage File received with respect to any Mortgage Loan, including, but not limited to, any original documents evidencing an assumption or modification of any Mortgage Loan.

Upon discovery or receipt of notice of any materially defective document in, or that a document is missing from, a Mortgage File, the Trustee (or the Custodian on behalf of the Trustee) shall notify the Servicer and the Servicer shall enforce the obligations of the Originator under the Mortgage Loan Purchase Agreement to cure such defect or deliver such missing document to the Trustee or the Custodian within 120 days. If the Originator does not cure such defect or deliver such missing document within such time period, the Servicer shall use commercially reasonable efforts to attempt to enforce the obligations of the Originator to either repurchase or substitute for such Mortgage Loan in accordance with Section 2.03; provided, however, that the Servicer shall not be under any obligation to take any action pursuant to this paragraph unless directed by the Depositor and provided, further, the Depositor hereby agrees to assist the Servicer in enforcing any obligations of the Originator to repurchase or substitute for a Mortgage Loan which has breached a representation or warranty under the Mortgage Loan Purchase Agreement. In connection with the foregoing, it is understood that the Custodian on behalf of the Trustee shall have no duty to discover any such defects except in the course of performing its review of the Mortgage Files to the extent set forth herein.

Except with respect to any Mortgage Loan for which MERS is identified on the Mortgage, the Trustee shall enforce the obligations of the Originator under the Mortgage Loan Purchase Agreement to cause the Assignments which were delivered in blank to be completed and to record all Assignments referred to in Section 2.01(iii) hereof and, to the extent necessary, in Section 2.01(iv) hereof. The Trustee shall enforce the obligations of the Originator under the Mortgage Loan Purchase Agreement to deliver such assignments for recording within 180 days of the Closing Date. In the event that any such Assignment is lost or returned unrecorded because of a defect therein, the Trustee shall enforce the obligations of the Originator under the Mortgage Loan Purchase Agreement to promptly have a substitute Assignment prepared or have such defect cured, as the case may be, and thereafter cause each such Assignment to be duly recorded.

Notwithstanding the foregoing, for administrative convenience and facilitation of servicing and to reduce closing costs, the Assignments of Mortgage shall not be required to be submitted for recording (except with respect to any Mortgage Loan located in Maryland) unless the Trustee (or the Custodian on behalf of the Trustee) and the Depositor receive notice that such failure to record would result in a withdrawal or a downgrading by any Rating Agency of the rating on any Class of Certificates; provided, however, each Assignment, except with respect to any Mortgage Loan for which MERS is identified on the Mortgage, shall be submitted for recording in the manner described above, at no expense to the Trust Fund or Trustee, upon the earliest to occur of: (i) reasonable direction by the Holders of Certificates entitled to at least 25% of the Voting Rights, (ii) the occurrence of a Servicer Event of Termination, (iii) the occurrence of a bankruptcy, insolvency or foreclosure relating to the Originator, (iv) the occurrence of a servicing transfer as described in



Section 7.02 hereof, (v) upon receipt of notice from the Servicer, the occurrence of a bankruptcy, insolvency or foreclosure relating to the Mortgagor under the related Mortgage, (vi) upon receipt of notice from the Servicer, any Mortgage Loan that is 90 days or more Delinquent and such recordation would be necessary to facilitate conversion of the Mortgaged Property in accordance with Section 3.16 and (vii) reasonable direction by the NIMS Insurer. In the event of (i) through (vii) set forth in the immediately preceding sentence, the Trustee shall enforce the obligations of the Originator to deliver such Assignments for recording as provided above, promptly and in any event within 30 days following receipt of notice by the Originator. Notwithstanding the foregoing, if the Originator fails to pay the cost of recording the Assignments, such expense will be paid by the Trustee (if it reasonably believes it will be reimbursed) and the Trustee shall be reimbursed for such expenses by the Trust.

The Servicer shall forward to the Custodian original documents evidencing an assumption, modification, consolidation or extension of any Mortgage Loan entered into in accordance with this Agreement within two weeks of their execution; provided, however, that the Servicer shall provide the Custodian with a certified true copy of any such document submitted for recordation within two weeks of its execution, and shall provide the original of any document submitted for recordation or a copy of such document certified by the appropriate public recording office to be a true and complete copy of the original within 365 days of its submission for recordation. In the event that the Servicer cannot provide a copy of such document certified by the public recording office within such 365 day period, the Servicer shall deliver to the Custodian, within such 365 day period, an Officers' Certificate of the Servicer which shall (A) identify the recorded document, (B) state that the recorded document has not been delivered to the Custodian due solely to a delay caused by the public recording office, (C) state the amount of time generally required by the applicable recording office to record and return a document submitted for recordation, if known and (D) specify the date the applicable recorded document is expected to be delivered to the Custodian, and, upon receipt of a copy of such document certified by the public recording office, the Servicer shall immediately deliver such document to the Custodian. In the event the appropriate public recording office will not certify as to the accuracy of such document, the Servicer shall deliver a copy of such document certified by an officer of the Servicer to be a true and complete copy of the original to the Custodian.

PSA:
http://www.sec.gov/Archives/edgar/data/1340328/000088237705002982/d381974_ex4-1.htm



## BORROWERS SUBSTITUTE TRUSTEE'S DEED
## SHOWS THE NAME OF THE TRUST THAT MATCHES BLOOMBERG

**ELECTRONICALLY RECORDED  201100250266**
**09/23/2011 10:23:27 AM TR DEED  1/3**

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER.

### SUBSTITUTE TRUSTEE'S DEED

Grantor(s): DIANNE M. SHANNON AND SPOUSE RUFUS A. SHANNON

**Original Mortgagee:**
OPTION ONE MORTGAGE CORPORATION, A CALIFORNIA CORPORATION

**CURRENT MORTGAGEE:**
Deutsche Bank National Trust Company, as Trustee for Soundview Home Loan Trust 2005-OPT3, Asset-Backed Certificates, Series 2005-OPT3

**MORTGAGE SERVICER:**
AMERICAN HOME MORTGAGE SERVICING

**RECORDING INFORMATION:**
Recorded on 08/17/2005 as document #3474992

**DATE OF SALE OF PROPERTY:** 09/06/11

**TIME OF SALE:** 01:00 PM

**PLACE OF SALE OF PROPERTY:**
The outside area on the north side of the George Allen Courts Building facing Commerce Street, or as otherwise designated by the County Commissioner's Office.

**GRANTEE/BUYER/PURCHASER:**
Deutsche Bank National Trust Company, as Trustee for Soundview Home Loan Trust 2005-OPT3, Asset-Backed Certificates, Series 2005-OPT3
4875 Belfort Road, Suite 130
Jacksonville, FL 32256

**AMOUNT OF SALE:** $75,000.00

LEGAL DESCRIPTION: BEING LOT 34, BLOCK E OF GLEN OAKS ADDITION, AN ADDITION TO THE CITY OF GRAND PRAIRIE, DALLAS COUNTY, TEXAS, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 80047, PAGE 435, MAP RECORDS, DALLAS COUNTY TEXAS ; the "Property"

Grantor conveyed to JAMES L. ROBERTSON, Trustee, certain property to secure payment of the Note. Mortgagee through the Mortgage Servicer, declared that Grantor defaulted in performing the obligations of the Deed of Trust. Current Mortgagee of the Note, through the Mortgage Servicer, accordingly has appointed Lori L. Long, Jeremy Cobb, Shelley Ortolani, Mary Mancuso and Jim Akins, Substitute Trustee and requested Substitute Trustee to enforce the Deed of Trust.

Notices stating the time, place and terms of sale of the property were mailed, posted and filed, as required by law and as evidenced by the Affidavit attached to this deed and incorporated herein by reference. Substitute Trustee sold the property to Buyer, who was the highest bidder at the public auction, for amount of sale in the manner prescribed by law. The subject sale was conducted no earlier than the time as set forth in the Notice of Substitute Trustee's Sale and was concluded within three (3)hours of such time. All matters, duties and obligations of Mortgagee were lawfully performed.

In consideration of the premises and of the bid and payment of the amount of $75,000.00, Substitute Trustee, subject to any matters of record, grants, sells and conveys the Property to Buyer. Buyer's heirs, executors, administrators, successors or assigns forever, the property together with all rights and appurtenances belonging to Grantor. I, as the Substitute Trustee, do hereby bind Grantor and Grantor's heirs and assigns to WARRANT and FOREVER DEFEND the Property to Buyer and Buyer's heirs and assigns forever, against the claim or claims of all persons claiming the same or any part thereof, except as to the prior liens and other exceptions to conveyance and warranty in the Deed of Trust.

Substitute Trustee hereby sells the above referenced property AS IS without any expressed or implied warranties, except as to warranties of title, and hereby conveys the property to the Purchaser at the Purchaser's own risk pursuant to the terms of Texas Property Code §§ 51.002 and 51.009.

*Shelley Ortolani*

Lori L. Long, Jeremy Cobb, Shelley Ortolani, Mary Mancuso and Jim Akins, Substitute Trustee



**SOUNDVIEW HOME LOAN TRUST 2005-OPT3 ON BLOOMBERG**
Bloomberg.com

**NAME OF TRUST**          **GROUP/STATUS**          **LOAN/YEAR/ZIPCODE**





## LOAN LEVEL DATA

## BORROWERS LOAN INSIDE THE TRUST





**CLASSES /CUSIP / GROUP DES = ACTIVE AND PAID STATUS**





**MCI** MORTGAGE COMPLIANCE INVESTIGATORS

## SECURITY DESCRIPTION SHOWS TRUSTEE OF THE TRUST

ES                                                                          Mtge **DES**

### SVHE 2005-OPT3 A1          .5018% 11/25/35

83611MHD3          SOUNDVIEW HOME EQUITY LOAN TRUST
2005-OPT3      A1          11/25/35
FLT,STEP,IRC                =          1x                              B
+26BP                              AA+

80,385,508          639,502,000      Avail Funds Cap
.125700166          2.6Yr      3          Flt 0.26%          CALLABLE
.50175%      coupon 4.10063%      Monthly                          RGW
4/25/12      payment 10/25/05                              DBT
4/24/12          9/30/05
3/26/12      date 9/30/05      pays 25th day          3.5
4/24/12          9/28/05      0 day delay
4/25/12      reset 10/25/05      accrue ACT/360
46%          83%

RESB/C 5.245 S 276wam 5.54wac
TRACE Eligible

| | Mar12 | Feb | Jan | Dec11 | Nov | Oct | Sep | Aug | Jul | Jun | May | April | | | |
|------|-------|------|------|-------|------|------|------|------|------|------|------|-------|---|---|---|
| PSA | 106 | 222 | 82 | 70 | 161 | 117 | 151 | 212 | 133 | 143 | 65 | 139 | | | No |
| CPR | 6.4 | 13.3 | 4.9 | 4.2 | 9.6 | 7.0 | 9.1 | 12.7 | 8.0 | 8.6 | 3.9 | 8.3 | | | DTC Book Entry |
| FACT | .13 | .13 | .13 | .13 | .13 | .13 | .13 | .14 | .14 | .14 | .14 | .14 | | | DTC SameDay |
| CPN | 0.50 | 0.50 | 0.54 | 0.55 | 0.52 | 0.50 | 0.49 | 0.48 | 0.45 | 0.45 | 0.45 | 0.47 | | | Clearstream |

Euroclear
25000          1

**DRSK**



## STRUCTURED FINANCE NOTES SHOWS THE ORIGINAL LENDER





**MORTGAGE
COMPLIANCE
INVESTIGATORS**

## PROSPECTUS FILING



PROSPECTUS SUPPLEMENT dated September 28, 2005 (to Prospectus dated September 26, 2005)

### $1,510,104,000 (Approximate)

## SOUNDVIEW HOME LOAN TRUST 2005-OPT3
## ASSET-BACKED CERTIFICATES, SERIES 2005-OPT3

**FINANCIAL ASSET SECURITIES CORP.**
*Depositor*

**OPTION ONE MORTGAGE CORPORATION**
*Originator and Servicer*

Only the fourteen classes of certificates identified below are being offered by this prospectus supplement and the accompanying prospectus.

**Consider carefully the risk factors beginning on page S-12 in this prospectus supplement and on page 6 in the prospectus.**

The certificates represent obligations of the trust only and do not represent an interest in or obligation of Financial Asset Securities Corp., Option One Mortgage Corporation or any of their affiliates. This prospectus supplement may be used to offer and

**The Offered Certificates**

- Represent ownership interests in a trust consisting of a pool of first lien and second lien fixed-rate and adjustable-rate residential mortgage loans. The mortgage loans will be segregated into two groups, one consisting of mortgage loans with principal balances that conform to Fannie Mae and Freddie Mac loan limits and one consisting of mortgage loans with principal balances that may or may not conform to Fannie Mae and Freddie Mac loan limits.
- The offered certificates will accrue interest at a rate equal to one-month LIBOR plus the related fixed margin, subject to certain limitations described in this prospectus supplement.

**Credit Enhancement**

- Subordination as described in this prospectus supplement under "Description of the Certificates—Credit Enhancement."
- Overcollateralization as described in this prospectus supplement under "Description of the Certificates—Overcollateralization Provisions."
- Excess Interest as described in this prospectus supplement under "Description of the

**THIS FUNCTION HAS BEEN ENHANCED.   GET ACCESS NOW.**          **Bloomberg**



# SECTION 3:  FORECLOSURE
## Chain of Title and Chain of Note
### Recorded Events on the Loan Including Foreclosure Issues and Securitization

| Recorded Chain of Deed Possession | |
|---|---|
| **Date** | **Original Deed of Trust** |
| AUGUST 17, 2005<br>Instrument #<br>3474992<br>Official Records,<br>DALLAS COUNTY<br>TEXAS | DIANNE M. SHANNON & RUFUS A. SHANNON<br>(Borrowers)<br><br>OPTION ONE MORTGAGE CORPORATION<br>(Lender)<br>Loan #  101049952 |
| SEPTEMBER 23, 2011<br>Instrument #<br>201100250266<br>Official Records,<br>DALLAS COUNTY<br>TEXAS | SUBSTITUTE TRUSTEE'S DEED<br>SIGNED BY: LORI  L. LONG AS<br>SUBSTITUTE TRUSTEE<br>DATED: SEPTEMBER 12, 2011 |

| Chain of Note Possession | |
|---|---|
| **Date** | **Note Holder** |
| JULY 29, 2005 | OPTION ONE MORTGAGE CORPORATION<br>(Lender)<br><br>Principal Amount:<br>$110,000.00<br>Loan # 101049952 |
| SEPTEMBER 1, 2005 | SOUNDVIEW HOME LOAN TRUST 2005-OPT3 |



# SECTION 4: REPORT SUMMARY

**Deed of Trust:**

- On JULY 29, 2005, Debtors DIANNE M. SHANNON & RUFUS A. SHANNON executed a negotiable promissory note and a security interest in the form of a Deed of Trust in the amount of $110,000.00. This document was filed as document number 3474992 in the Official Records, DALLAS COUNTY, TEXAS. This document identifies the *loan number as 101049952*. The *original lender of the promissory note is OPTION ONE MORTGAGE CORPORATION. The original trustee under this Deed of Trust is James L. Robertson.*

**SUBSTITUTE TRUSTEE'S DEED:**

- On SEPTEMBER 23, 2011, a SUBSTITUTE TRUSTEE'S DEED was filed as document number 201100250266 in the Recorder's Office, DALLAS COUNTY, TEXAS. This document properly identifies the amount of the mortgage loan that debtor obtained on JULY 29, 2005.

**Securitization:**

- The NOTE was sold, transferred and securitized into **SOUNDVIEW HOME LOAN TRUST 2005-OPT3.**



### CHAIN OF TITLE



- For traditional lending prior to Securitization, the original Deed recording was usually the only recorded document in the Chain of Title. That is because banks kept the loans, and did not sell the loan, hence, only the original recording being present in the banks name.

The advent of Securitization, especially through "Private Investors" and not Fannie Mae or Freddie Mac, involved an entirely new process in mortgage lending. With Securitization, the Notes and Deeds were sold once, twice, three times or more. Using the traditional model would involve recording new Assignments of the Deed and Note as each transfer of the Note or Deed of Trust occurred. Obviously, this required time and money for each recording.

*(The selling or transferring of the Note is not to be confused with the selling of Servicing Rights, which is simply the right to collect payment on the Note, and keep a small portion of the payment for Servicing Fees. Usually, when a homeowner states that their loan was sold, they are referring to Servicing Rights)*

*Securitizing a Loan*

Securitizing a loan is the process of selling a loan to Wall Street and private investors. it is a method with many issues to be considered. The methodology of securitizing a loan generally followed these steps:

- *A Wall Street firm would approach other entities about issuing a "Series of Bonds" for sale to investors and would come to an agreement. In other words, the Wall Street firm "pre-sold" the bonds.*

- *The Wall Street firm would approach a lender and usually offer them a Warehouse Line of Credit. The Warehouse Credit Line would be used to fund the loan. The Warehouse Line would be covered by restrictions resulting from the initial Pooling & Servicing Agreement Guidelines and the Mortgage Loan Purchase Agreement. These documents outlined the procedures for the creation of the loans and the administering of the loans prior to, and after, the sale of the loans to Wall Street.*

- *The Lender, with the guidelines, essentially went out and found "buyers" for the loans, people who fit the general characteristics of the Purchase Agreement. (Guidelines were very general and most people could qualify." The Lender would execute the loan and fund it, collecting payments until there were enough loans funded to sell to the Wall Street firm who could then issue the bonds.*

- *Once the necessary loans were funded, the lender would then sell the loans to the "Sponsor", usually either a subsidiary of the Wall Street firm, of a specially created*



*Corporation of the lender. At this point, the loans are separated into "tranches" of loans, where they will be eventually turned into bonds.*

- *Next, the loans were "sold" to the "Depositor". This was a "Special Purpose Vehicle" designed with one purpose in mind. That was to create a "bankruptcy remote vehicle" where the lender or other entities are protected from what might happen to the loans, and/or the loans are "protected from the lender. The "Depositor" would have once again created by the Wall Street firm or the Lender.*

- *Then, the "Depositor" places the loans into the Issuing Entity, which is another created entity solely used for the purpose of selling the bonds.*

- *Finally, the bonds would be sold, with a Trustee appointed to ensure that the bondholders received their monthly payments.*

OPTION ONE MORTGAGE CORPORATION was a "correspondent lender" that originated mortgage loans which in turn, was sold and transferred into a "federally-approved securitization" trust named SOUNDVIEW HOME LOAN TRUST 2005-OPT3.

■ The Note and Deed have taken two distinctly different paths. The Note was securitized into SOUNDVIEW HOME LOAN TRUST 2005-OPT3.

■ The written agreement that created the SOUNDVIEW HOME LOAN TRUST 2005-OPT3 is a "Pooling and Servicing Agreement" (PSA), and is a matter of public record, available on the website of the Securities Exchange Commission. The Trust is also described in a "Prospectus Supplement," also available on the SEC website. The Trust by its terms set a "CLOSING DATE" of ON OR ABOUT SEPTEMBER 30, 2005. The promissory note in this case became trust property in compliance with the requirement set forth in the PSA. The Trust agreement is filed under oath with the Securities and Exchange Commission. The acquisition of the assets of the subject Trust and the PSA are governed under the law.

*In view of the foregoing, the Assignment of Deed of Trust executed after the Trust's Closing Date would be a void act for the reason that it violated the express terms of the Trust instrument.*

■ The loan was originally made to OPTION ONE MORTGAGE CORPORATION and was sold and transferred to SOUNDVIEW HOME LOAN TRUST 2005-OPT3. There is no record of Assignments to either the Sponsor or Depositor as required by the Pooling and Servicing Agreement.

In *Carpenter v. Longan* 16 Wall. 271,83 U.S. 271, 274, 21 L.Ed. 313 (1872), **the U.S. Supreme Court stated "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while assignment of the latter alone is a nullity."**

An obligation can exist with or without security. With no security, the obligation is unsecured but still valid. A security interest, however, cannot exist without an underlying



existing obligation.  It is impossible to define security apart from its relationship to the promise or obligation it secures.  The obligation and the security are commonly drafted as separate documents – typically a promissory note and a deed of trust.  If the creditor transfers the note but not the deed of trust, the transferee receives a secured note; the security follows the note, legally if not physically.  If the transferee is given the deed of trust without the note accompanying it, the transferee has no meaningful rights except the possibility of legal action to compel the transferor to transfer the note as well, if such was the agreement.  (Kelley v. Upshaw 91952) 39 C.2d 179, 246 P.2d 23; Polhemus v. Trainer (1866) 30C 685)

"Where the mortgagee has "transferred" only the mortgage, the transaction is a nullity and his "assignee" having received no interest in the underlying debt or obligation, has a worthless piece of paper (4 Richard R. Powell), Powell on Real Property, § 37.27 [2] (2000)

By statute, assignment of the mortgage carries with it the assignment of the debt. . . Indeed, in the event that a mortgage loan somehow separates interests of the note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable. *The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose*, unless the holder of the deed of trust is the agent of the holder of the note. Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default. The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. *The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust*."



# AFFIDAVIT

**STATE OF CALIFORNIA** )

)

**COUNTY OF LOS ANGELES** )

I, Arthur Bernardo, a citizen of the United States and the State of California over the age of 21 years, and declares as follows, under penalty of perjury that the facts stated herein are true, correct and complete. The undersigned believes them to be true and admissible as evidence in a court of law, and if called upon as a witness, will testify as stated herein:

1. That I am a subscriber of the Bloomberg Professional Services, certified and licensed to use such service. I have completed the required training and engaged in the continual education with Bloomberg – both online and at Bloomberg's headquarters, to stay abreast with Bloomberg's latest progress and developments. I have the requisite knowledge and the trained command to navigate and perform effective searches on the Bloomberg terminal.

2. I have the trained skills and qualifications to navigate and perform searches on the Bloomberg terminal in regards to the automatic tracking and determination of mortgage loans and the subsequent loan-related documents and information.

3. The contents of this report are factual, but it is provided for information purposes only and is not to be construed as "legal advice."[1]

4. On April 10, 2012, I researched the Bloomberg online Database at the request of DIANNE M. SHANNON & RUFUS A. SHANNON whose property address is 3749 MAGNOLIA DR GRAND PRAIRIE, TX 75052.

5. Based on the information I was provided, DIANNE M. SHANNON & RUFUS A. SHANNON signed a Promissory Note in favor of Option One Mortgage Corporation on July 29, 2005.

---

[1] The client has been strongly advised to seek legal consultation from a competent legal professional in connection with the content of this report and how to properly use it



6. The Loan was identified in SOUNDVIEW HOME LOAN TRUST 2005-OPT3 with the Master Servicer being OPTION ONE MORTGAGE CORPORATION, the Sponsor / Seller being OPTION ONE MORTGAGE CORPORATION and the Depositor being FINANCIAL ASSET SECURITIES CORP.

7. The basis of the identification of the Loan in SOUNDVIEW HOME LOAN TRUST 2005-OPT3 was based on the following factors/information from "SOUNDVIEW HOME LOAN TRUST 2005-OPT3 - Loans" that corresponds exactly with DIANNE M. SHANNON & RUFUS A. SHANNON's loan documents provided: **Original Amount**: $110,000.00; **Location of Property**: Texas; **Property Type**: Single Family Residence; **Zip Code**: 75052.

8. Pursuant to my extensive research, I have found the Loan in twenty (20) Classes of the SOUNDVIEW HOME LOAN TRUST 2005-OPT3. These classes represent the sections that the SOUNDVIEW HOME LOAN TRUST 2005-OPT3 is divided into. Individuals invest in these Classes based on their desired maturities. The SOUNDVIEW HOME LOAN TRUST 2005-OPT3 pays interest, usually monthly, to investors and principal payments are paid out in the order of the maturity.

9. Below are the classes the SOUNDVIEW HOME LOAN TRUST 2005-OPT3 has been divided into and their CUSIP number which is a nine (9) character alphanumeric code identifying any North American security for the purpose of facilitating clearing and settlement of trades.





10. There are a total of twenty one (21) classes in SOUNDVIEW HOME LOAN TRUST
2005-OPT3.

11. The Loan is in the twenty (20) classes.   Nine (9) classes out of the twenty (20) have
been paid off.

12. Generally, if the Deed of Trust and the Note are not together with the same entity, there
can be no legal enforcement of the Note.   The deed of trust enforces the Note and pro-
vides the capability for the lender to foreclose on the property.   Thus, if the Deed of
Trust and the Note are separated and has different mortgagee / beneficiary, foreclosure
cannot legally occur.

13. No Entity can be a CREDITOR if they do not hold/own the asset in question (i.e. the
NOTE and/or the property); a Mortgage Pass Through Trust (i.e. R.E.M.I.C., as defined
in Title 26, Subtitle A, Chapter 1, Subchapter M, Part II §§ 850-862) cannot hold assets,
for if they do, their tax exempt status is violated and the Trust itself is void *ab initio*.



Therefore, either the Trust has either voided its intended Tax Free Status, or the asset is not in fact owned by it.

Careful review and examination reveals that this was a securitized loan. The Assignment of Mortgage pretended to be an A to D transaction when in fact the foreclosing party was hiding the A to B, B to C, and C to D facts of true sales. They also hid the legal SEC filings, governing the transaction according to our findings. But to be controlled by those SEC filings, the true original loan Note and Mortgage had to be provided by the Document Custodian certified to have been in possession of them by the on or about SEPTEMBER 30, 2005. Because it was not, the claim of ownership by the Trust cannot be substantiated and the loan servicing rights not established at law by agreement.

By: _____

**ARTHUR BERNARDO**
**Bloomberg Specialist / Certified Mortgage Securitization Auditor**